UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No. 6: 14-020-DCR-6 |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 6: 17-033-DCR |
| V. ) | |
| ) | |
| ROBERT SCOTT SHEPPARD, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Movant Robert Scott Sheppard's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 375] Because the record conclusively establishes that Sheppard is not entitled to any relief, the motion will be denied without further proceedings. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir.1996) ("An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'"); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) ("[N]o hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'"))

I.

Sheppard is a long-time criminal with over twenty prior convictions and even more arrests. [*See* Record No. 312 at ¶¶49-78.] As particularly relevant here, Sheppard pleaded guilty in 1998 to Louisiana state charges of aggravated battery and simple criminal damage to

-1-

property. [*Id.* at ¶51] Charging documents allege that, on or about November 2, 1997, Sheppard and three others assaulted a man using brass knuckles, a metal pipe, and a hammer. They further damaged the victim's truck. Sheppard was sentenced to three years' incarceration for the aggravated battery charge. [*Id.*]

Among numerous other convictions for battery, assault, trespassing, criminal mischief, and possession of controlled substances (to name a few), Sheppard pleaded guilty in 2005 in a Kentucky state court to unlawfully possessing methamphetamine precursors. [*Id.* at 57] Sheppard was originally charged with manufacturing methamphetamine, but pleaded to the amended charge of possessing precursors (with intent to manufacture), a Class D felony. [*Id.*] Further, in 2011 Sheppard pleaded guilty in an Indiana state court to possessing chemical reagents or precursors with intent to manufacture. [Record No. 312 at ¶66] Sheppard and another individual had been arrested for shoplifting a one-pound bottle of lye, and were found to be in possession of unopened instant cold packs (both methamphetamine precursors) containing chemicals listed in the Indiana statute. The conviction was a Class C felony. [*Id.*]

Sheppard was indicted federally on May 22, 2014, on two counts of being a felon in possession of a firearm in violation of Title 18 of the United States Code, Section 922(g)(1). [Record No. 8] The indictment was based upon two separate instances in Whitley County, Kentucky (in 2012 and 2014) whereupon Sheppard admitted to being in possession of firearms.[1] [*Id.*; Record No. 346] For the 2012 charge, Sheppard admitted to discharging a

---

[1] Sheppard was charged in two counts of the six-count indictment. [Record No. 8] He was charged in Count 1 with possessing a Winchester Model 190 .22 caliber handgun, serial number B1459203, and was charged in Count 6 with possessing a Remington Model 870 Wingmaster 12-gauge shotgun, serial number V021310V, and a F.I.E. Titan Model .25 caliber pistol, serial number: 227603. [*Id.* at 1, 4-5]

firearm, striking an acquaintance in the back, although he claimed that he intended to shoot him in the buttocks. [Record No. 312 at 25; Record No. 346] In February 2014, Sheppard was found hiding in a basement with, among other things, a shotgun and a pistol. [*Id.*]

On February 6, 2015, Sheppard pleaded guilty to both counts charged pursuant to a written plea agreement. [Record Nos. 158 and 295] A Presentence Investigation Report ("PSR") prepared by the United States Probation Office calculated Sheppard's total offense level as 27. [Record No. 312 at ¶47] Sheppard's base offense level was 24 under §2K2.1(a)(2), based upon two or more prior felony convictions for crimes of violence or controlled substance offenses. [*Id.* at ¶38] Pursuant to §2K2.1(b)(1)(A), Sheppard was assessed a two-level increase because the offense involved 3 to 7 firearms. [*Id.* at ¶38] Sheppard was also assessed a four-level increase for using a firearm in connection with a felony offense, pursuant to §2K2.1(b)(6)(B). [*Id.* at ¶40] Finally, Sheppard received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 27. [*Id.* at ¶¶46 and 47] Based on Sheppard's criminal history, his non-binding guideline imprisonment range was 130 months to 162 months. [Record No. 312 at 19]

Prior to sentencing, Sheppard's counsel objected to the proposed four-level increase for use of a firearm in connection with a felony offense. [Record No. 219] He argued that Sheppard's state of mind when using the firearm could not qualify the offense as assault, because he had intended to defend a family from an intruder. [*Id.*] The Court heard testimony during the sentencing hearing but found sufficient evidence to support the enhancement. [Record No. 346] Sheppard was sentenced on August 21, 2015, to a total term of incarceration of 162 months, followed by a three-year term of supervised release. [Record Nos. 300 and

302] Sheppard's sentence was reflected his extensive criminal history (i.e, his history and characteristics) as well as all other relevant statutory sentencing factors.

Sheppard timely appealed his sentence, arguing that it was both procedurally and substantively unreasonable.[2] [*See* Record No. 310] However, on October 14, 2016, the Sixth Circuit affirmed Sheppard's sentence, finding his arguments to be without merit. [Record No. 368] On February 13, 2017, Sheppard filed a timely motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Record No. 375] Based upon the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the pending case *Beckles v. United States*, 137 S. Ct. 886 (2017), and the holding in *Descamps v. United States*, 133 S.Ct. 2276 (2013), Sheppard argued that he did not have two prior-qualifying felony convictions and, therefore, his base level offense was improperly increased to 24. [*Id.*]

On April 10, 2017, Sheppard filed a "Supplemental Memorandum of Facts and Law" in support of his § 2255 motion. [Record No. 382] The supplemental filing further elaborated on Sheppard's claims regarding the allegedly-improper base offense level increase and, importantly, clarified that his petition was predicated upon his attorney's failure to object to the base offense level increase. [*Id.*] Finally, on May 10, 2017, Sheppard filed a motion to amend his petition, arguing that his attorney was also ineffective by failing to object to the two-level increase for the number of firearms involved in the offense. [Record No. 385] Because the proposed amendment was timely and non-frivolous, the motion was granted. [Record No. 387]

---

[2] Sheppard agreed in his written Plea Agreement to forfeit his right to appeal his guilty plea and conviction, but retained the right to appeal his sentence. [Record No. 295 at ¶8] He also forfeited his right to collaterally attack his guilty plea, conviction, or sentence, except for claims of ineffective assistance of counsel. [*Id.*]

**II.**

Sheppard's motion, as amended, challenges his base offense level increase under §2K2.1(a)(2) and his two-level enhancement under §2K2.1(b)(1)(A) for possessing three firearms. As for the former challenge, Sheppard asserts that he does not have the requisite prior felony convictions to qualify for a base level of 24. Regarding the latter claim, Sheppard argues that, because he did not possess three or more firearms *at the same time*, he does not qualify for the quantity enhancement under §2K2.1(b)(1)(A). Sheppard contends that his counsel's failure to object to these enhancements prejudiced him by resulting in a greater sentence than he otherwise would have received.

To obtain relief on the grounds of ineffective assistance of counsel, Sheppard must establish "(1) that his lawyer's performance was deficient as compared to an objective standard of reasonable performance and (2) that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome; it is a less demanding standard than 'more likely than not.'" *Id.* (citing *Strickland*, 466 U.S. at 693-94) (quotation mark omitted). Review of the record clearly establishes that the sentencing objections Sheppard proposes are without merit. His counsel's performance was not deficient and Sheppard was not prejudiced.

**a.**

Sheppard provides differing arguments for why his state court convictions do not count as crimes of violence or controlled substance offenses. However, the Fifth Circuit has already determined that Louisiana aggravated battery convictions such as Sheppard's count as a crimes

of violence under the residual clause, as contained in the 2014 Guideline Manual and recently upheld by the Supreme Court. Moreover, Sheppard's Kentucky conviction for possession of methamphetamine precursors, by definition, qualifies as a controlled substance offense. Sheppard does not discuss his Kentucky conviction, but instead argues that his Indiana precursor-possession conviction was improperly counted. Because §2K2.1(a)(2) requires only two prior convictions of this nature, Sheppard's prior convictions qualify without counting the Indiana case.

1.

Sheppard first argues that his Louisiana conviction for aggravated battery does not count as a crime of violence under the residual clause. [Record No. 382 at 4-8] He cites *United States v. Hernandez-Rodriguez*, 788 F.3d 193 (5th Cir. 2015), together with *Mathis v. United States*, 136 S.Ct. 2243 (2016), for this proposition. *Hernandez-Rodriguez* found that Louisiana aggravated battery does not count as an enumerated crime of violence predicate under U.S.S.G. §2L1.2(b)(1)(A)(ii). 788 F.3d at 194. Moreover, because aggravated burglary may be committed via administration of poison (which, the Court found, is not "synonymous with destructive or violent force"), reference to *Shepard* documents was necessary to determine whether use of destructive or violent force was charged. *Id.* at 196-97. Because no *Shepard* documents were available, the court could not exclude the possibility that the defendant was charged with the administration-of-poison "alternative" and, therefore, found that the defendant did not qualify for the enhancement. *Id.* at 197.

*Hernandez-Rodriguez* did not specifically decide the *Mathis* question of "means" versus "elements." *See Mathis*, 136 S.Ct. at 2249. And neither must this Court. *Hernandez-Rodriguez* dealt only with a U.S.S.G. §2L1.2 enhancement, related to unlawful reentry or

-6-

remaining in the United States. §2L1.2 does not, and did not at the time, contain a residual clause. *See United States v. Herrera-Alvarez*, 753 F.3d 132, 136 (5th Cir. 2014) ("Section 2L1.2, by contrast [to §4B1.2(a)], has no comparable residual clause."). Sheppard's enhancement was by operation of §2K2.1(a)(2), which provides a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." "Crime of violence" under §2K2.1(a)(2) carries the same definition as under §4B1.2(a). U.S.S.G. §2K2.1 comm. n.1. (2014). The 2014 version of the Sentencing Guidelines under which Sheppard was sentenced included a residual clause in §4B1.2(a), incorporating as "crimes of violence" "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another."

The United States Court of Appeals for the Fifth Circuit has held, in no uncertain terms, that "aggravated battery, as defined by Louisiana . . . is indisputably a crime of violence under the residual clause of § 4B1.2(a)." *United States v. Moore*, 635 F.3d 774, 777 (5th Cir. 2011).[3] *See also Herrera-Alvarez*, 753 F.3d at 136 ("We held [in *Moore*] that Louisiana aggravated battery was a crime of violence for the purpose of the residual clause of the career offender Guideline because it involved conduct that presented 'a serious potential risk of physical injury to another' and it was 'purposeful, violent, and aggressive.'") (quotation marks omitted).

---

[3] While *Moore* appeared to take a (now *Mathis*-verboten) peak at the *Shepard* documents (to avoid discussion of the statute's poison-alternative), the Sixth Circuit has recognized that administering poison necessarily involves a high risk of injury, such that an offense that includes intentional poisoning fits within the residual clause. *See United States v. Jones*, 673 F.3d 497, 507 (6th Cir. 2012).

Enhancements under the residual clause remain valid. *Beckles v. United States*, 137 S.Ct. 886 (2017). Because Sheppard's Louisiana aggravated battery conviction plainly qualified as a "crime of violence" under the then-and-now valid residual clause, Sheppard cannot show that he was prejudiced by counsel's failure to object.

2.

Sheppard next argues that his Indiana conviction for possession of a precursor or chemical reagent is not a "controlled substance offense" for purposes of §2K2.1(a)(2), as defined in §4B1.2(b) and application note one (which states "[u]nlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a 'controlled substance offense.'"). He cites *United States v. Tate*, 822 F.3d 370 (7th Cir. 2016), which dealt with a challenge to an Illinois statute barring possession of anhydrous ammonia (with intent to manufacture methamphetamine). The *Tate* court found that, because anhydrous ammonia is not a listed chemical under 21 U.S.C. § 802 or 21 C.F.R. § 1310.02, the defendant's conviction under the Illinois statute did not qualify as a controlled substance offense for purposes of §4B1.2. 822 F.3d at 377. Sheppard suggests that because his Indiana statute of conviction, Ind. Code § 35-48-4-14.5, includes anhydrous ammonia (and, he argues, is indivisible), *Mathis* does not permit his Indiana conviction to qualify as a controlled substance offense.

Sheppard is correct that the Indiana statute covers more chemicals than those "listed" for purposes of §4B1.2. Further, Sheppard's Indiana conviction is for possession of sodium hydroxide and ammonia nitrite (lye and cold packs), both non-federally-listed chemicals. However, contrary to Sheppard's suggestion, there is no basis in the record to suggest that his Indiana conviction was counted for the purpose of increasing his base offense level under

§2K2.1(a)(2). Sheppard conveniently fails to acknowledge another conviction: a 2005 guilty plea in Kentucky for possession of methamphetamine precursors.

3.

On June 27, 2005, Sheppard pleaded guilty to unlawful possession of a meth precursor, first offense, in the Whitley Circuit Court. [*See* Record No. 312 at 12] Sheppard was originally charged with manufacturing methamphetamine, but he agreed to plead to the amended charge. His charge of conviction is codified at Kentucky Revised Statute § 218A.1437. The statute reads, in pertinent part:

> A person is guilty of unlawful possession of a methamphetamine precursor when he or she knowingly and unlawfully possesses a drug product or combination of drug products containing ephedrine, pseudoephedrine, or phenylpropanolamine, or their salts, isomers, or salts of isomers, with the intent to use the drug product or combination of drug products as a precursor to manufacturing methamphetamine or other controlled substance.

KRS § 218A.1437(1). Ephedrine, pseudoephedrine, and phenylpropanolamine (along with their salts, isomers, and salts of isomers) are listed chemicals. 21 U.S.C. § 802(34)(C), (I), (K). Further, the statute requires intent to use the precursors for manufacturing. Therefore, Sheppard's Kentucky conviction plainly qualifies as a controlled substance offense. *See* U.S.S.G. §4B1.2 comm. n.1 ("Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a 'controlled substance offense.'"). As his first offense, the Kentucky conviction was a Class D felony. KRS § 218A.1437(3).

Combining the Kentucky conviction for possession of a precursor with the Louisiana aggravated battery conviction, Sheppard has "at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. §2K2.1(a)(2). Therefore, Sheppard

cannot show that he was prejudiced by counsel's failure to object to the base offense level calculation of 24.

**b.**

Finally, Sheppard argues that counsel was ineffective for failing to object to the two-level enhancement under §2K2.1(b)(1)(A) for offenses involving 3 to 7 firearms. [Record No. 358] Citing *United States v. Kish*, 424 F. App'x 398 (6th Cir. 2011), and *United States v. Henry*, 819 F.3d 856 (6th Cir. 2016), he suggests that because the three firearms did not "come within the same course of conduct or . . . common scheme or plan," the enhancement is inapplicable. Neither case stands for the proposition Sheppard suggests, and *Henry* cuts against his position.

The defendant in *Henry* was charged with one count of selling a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1), and received an enhancement under U.S.S.G §2K2.1(b)(5) for firearms trafficking. 819 F.3d at 861. The defendant challenged the trafficking enhancement, arguing that it did not apply to his conduct selling a total of two firearms to two separate individuals. *Id.* at 870. The Sixth Circuit agreed. The Court determined that, based on the plain language of the Guidelines (particularly the word "another" in Comment 13), the trafficking enhancement applied only where two or more firearms were sold to a single individual. *Id.* at 871 ("Thus, the relevant transferring must be done 'to another individual,' strongly suggesting that the transfer of one gun to two different people cannot be aggregated."). In so reasoning, the Sixth Circuit rejected the government's argument that §2K2.1(b)(1)—and its tiered enhancements based on the number of firearms "involved" in the offense—is "intended solely to punish possession." *Id.* at 871. It found that the defendant's conduct of selling a single firearm to numerous individuals could qualify for the §2K2.1(b)(1)

-10-

enhancement (if at least three firearms were involved) but that, unless numerous firearms were sold to a single individual, the §2K2.1(b)(5) trafficking enhancement did not apply. *Henry* did nothing to narrow the scope §2K1.1(b)(1). Instead, the case suggested that the provision likely covers a defendant's sale of single firearms to numerous individuals.

In *United States v. Kish*, 424 F. App'x 398 (6th Cir. 2011), the defendants were charged with single counts of dealing firearms without a license. *Id.* at 405. The defendants challenged the standard used for counting the total number of firearms as relevant to §2K2.1(b)(1). *Id.* at 408. The *Kish* court was tasked with reviewing a determination of the number of firearms "involved" where the defendants were *dealing* firearms. *Kish* is instructive inasmuch as it discusses interpretation of §2K2.1(b)(1), generally, but for little more. There, the court recognized that, because the defendants were not federally-licensed firearms dealers, it was unlawful for them not only "to sell firearms with the principal objective of livelihood and profit, but also to make firearms available for sale with this objective." *Id.* at 409. Accordingly, all of the firearms *available for sale* were properly counted. One of the defendants argued that the guns she provided to a friend for sale at a local flea market should not be counted. *Id.* at 408. However, the court found that the firearms placed for sale at their pawn shop *and* at the flea market were "fairly considered part of [the defendants'] course of conduct or scheme or plan to deal in firearms without a license." *Id.* at 409.

Importantly, the *Kish* Court noted that, for purposes of §2K2.1(b)(1), the "relevant conduct" portion of the guidelines, §1B1.3(a)(2) applies, which counts "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." 424 F. App'x at 408 (citing *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir.

1998)). Section 1B1.3(a)(2) is applicable because §3D1.2(b) specifically provides that §2K2.1 offenses must be grouped together.

Sheppard argues that, because the possession charges are "unrelated" (i.e., they were based on separate instances of him possessing firearms), one charge cannot be used to "enhance the other." The charges are, however, hardly unrelated. In February 2014, Sheppard, then a wanted fugitive, was found hiding in a basement along with a shotgun, a semi-automatic handgun, and a backpack containing methamphetamine precursors. [Record No. 346 at 6, 34-36] Sheppard later made a statement to police during which he admitted shooting an acquaintance (Johnny Hill) in the back, in December 2012. [*Id.* at 7, 48-49] The 2012 shooting allegedly occurred when Sheppard heard a possible intruder on his property and went outside to investigate. [*Id.* at 12] Sheppard believed that the intruder was Johnny Hill's brother, Melvin Hill, who "been robbing him blind or stealing from him." [*Id.* (Testimony of Williamsburg, KY Police Chief Wayne Bird)] Sheppard indicated that, when he fired his gun that night, he "was under the impression that it was Melvin Hill trying to rob him again." [*Id.*] While other testimony appeared to contradict Sheppard's story and suggest that he had, in fact, intentionally shot Johnny Hill [*Id.* at 49], it is clear that Sheppard, by his own statements, possessed the guns to protect himself from being robbed (notably, from being robbed of his methamphetamine). Moreover, information about his 2012 firearm possession was discovered in concert with Sheppard's 2014 arrest, and the firearms were seized at the same time. [*See* Record No. 312 at ¶¶16-18] While there were guns "all over" the dwelling where Sheppard was found, he admitted to sleeping in close proximity to two firearms, which formed the basis for Count 6, to which he pleaded guilty. [*Id.*] There is little doubt that Sheppard possessed the firearms to protect himself and his methamphetamine operation. [*See* Record No. 346 at

48.] Moreover, the individual whom Sheppard stated he thought he was shooting at in 2012 admitted that he had been around Sheppard's manufacturing operation. [*Id.*]

Contrary to Sheppard's suggestion, the "common scheme or plan" standard does not prohibit temporally-distinct instances of possession (here, 2012 and 2014) from being amalgamated for purposes of §2K2.1(b)(2). "In reviewing whether prior offenses constitute part of a 'common scheme or plan' or the 'same course of conduct' as the offense of conviction, the Sixth Circuit has never articulated a precise time bar after which conduct becomes irrelevant for sentencing purposes." *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996) Moreover, "a lapse of time between prior conduct and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct; rather, such a lapse may result when participants are forced to put the venture 'on hold.'" *Id.* There is no indication that Sheppard put his unlawful firearm possession "on hold."

As an initial matter, natural language suggests that where the offense underlying the conduct is unlawful possession, Sheppard's possession, at different times, of numerous firearms, are "part of the same course of conduct . . . as the offense of conviction." §1B1.3(a)(2). And while temporal proximity is a factor, it is not the only factor. *See United States v. Vargem*, 747 F.3d 724, 731 (9th Cir. 2014) ("[T]the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity."). Application Note 9 (A) to the 2014 Guidelines provides "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." Here, the victim of the offenses (society at large) is the same, as well as the purpose and *modus operandi*—protection of his drug activity. Application Note 9 (B) further

provides that offenses not part of a common scheme or plan may instead be considered the same course of conduct based upon "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Here, the conduct is the same. Sheppard *regularly* possessed firearms to protect his drug operation, and the charged instances occurred less than 14 months apart.

Because the record establishes the requisite connection between Sheppard's charged conduct, he cannot show that he was prejudiced by counsel's failure to object to the §2K2.1(b)(1) enhancement.

## III.

Among his numerous prior convictions, Sheppard pleaded guilty to a felony crime of violence (Louisiana aggravated battery) and a felony controlled substance offense (Kentucky unlawful possession of methamphetamine precursors). As such, when he was sentenced in 2015, he qualified for a base offense level of 24 under §2K2.1(a)(2).

When Sheppard was arrested in 2014—in possession of at least two firearms and materials for cooking methamphetamine—he admitted to having discharged a firearm 14 months earlier on suspicion that someone was coming to rob him. Rob him, that is, of his drugs and/or drug proceeds. There is little doubt of a direct link between his December 2012 and February 2014 unlawful firearm possession. Therefore, the firearms were rightly counted for purposes of a §2K2.1(b)(1) enhancement.

Under the facts presented, Sheppard cannot establish that his attorney's failure to object to the enhancements meant that he was not acting as the counsel required by the Sixth Amendment, nor can he show that he was prejudiced.

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court will deny a certificate of appealability. Sheppard has failed to show that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong" or that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Robert Scott Sheppard's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 375] is **DENIED**.

2. This matter is **DISMISSED**, with prejudice, and **STRICKEN** from the docket. This 11th day of August, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge