UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:14-CR-20-DCR-6
(Civil Action No. 6:17-CV-33-DCR)

UNITED STATES OF AMERICA,                    PLAINTIFF/RESPONDENT,

V.                     **RECOMMENDED DISPOSITION**

ROBERT SCOTT SHEPPARD,                    DEFENDANT/MOVANT.

*** *** *** ***

On February 6, 2015, Robert Scott Sheppard pleaded guilty to two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] [R. 158]. His guidelines were calculated as follows:

1. His Base Offense Level was determined to be 24, under USSG §2K2.1 as his offense of conviction involved possession of firearms by a felon who had been previously convicted of two or more crimes of violence or controlled substance offenses.

2. He received a two-level enhancement, bringing his offense level to 26 as he possessed between 3 and 8 firearms, under USSG §2K2.1(b)(1)(A).

---

[1] The first count was the result of a December 2012 incident, and the second, of a February 2014 incident – both occurring in Whitley County, Kentucky. [R. 8 at 1, 4-5]. For the 2012 charge, Sheppard was found with possession of a Winchester Model 190 .22 caliber handgun (SN: B1459203). [*Id.* at 1]. For the 2014 charge, he was found with possession of a Remington Model 870 Wingmaster 12-gauge shotgun (SN: V021310V), and a F.I.E. Model Titan .25 caliber pistol (SN 227603).

3. His offense level was increased by an additional four levels because he used a firearm in connection with the felony offense of Assault 2nd degree, bringing his total adjusted offense level to 30.

4. He received a three-level reduction for his timely acceptance of responsibility, resulting in a Total Offense Level of 27.

Based on this calculation (and considering his criminal history category), on August 21, 2105, he was sentenced to incarceration for 162 months, followed by three-years of supervised release. [R. 300, 302]. Proceeding pro se, he now brings two challenges to his sentence under 28 U.S.C. § 2255.[2]

First, he asserts that his base offense level was incorrectly calculated under 18 U.S.C. § 922(g). Section 2K2.1 of the Sentencing Guidelines provides that an offense involving possession of firearms by a felon convicted of two or more crimes of violence or controlled substance offenses has a base offense level of 24. USSG §2K2.1(a)(2). Sheppard argues that his base offense level of 24 is wrong because he did not have two prior-qualifying felony convictions. [R. 375-1, 382].

Sheppard's second argument challenges a two-level enhancement to his base offense. He argues that this enhancement was improperly applied because he did not possess three or more firearms —at the same time— and he therefore does not qualify for the quantity enhancement under §2K2.1(b)(1)(A). [R. 385].

---

[2] Under 28 U.S.C. § 2255, a prisoner in custody under a sentence of a United States Court may petition that court to amend his or her sentence upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the court imposing the sentence lacked jurisdiction to do so, that the sentence is excessive, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

On February 13, 2017, Sheppard filed this timely motion seeking to challenge his sentence under 28 U.S.C. § 2255. [R. 375], arguing that his trial counsel's failure to object to his base offense level increase under §2K2.1(a)(2) violated his Sixth Amendment right to effective assistance of counsel. [R. 375-1, 382]. On May 10, 2017, Sheppard sought to amend his § 2255, arguing that because he did not possess three or more firearms at the same time, he did not qualify for the number-of-guns enhancement under §2K2.1(b)(1)(A). [R. 385]. After reviewing both motions, on August 11, 2017, the Court found that Sheppard was not entitled to any § 2255 relief since Sheppard had not met his burden of proof: Sheppard had failed to establish any plausible claim of ineffective assistance of counsel. [R. 388].

Sheppard sought review from the Sixth Circuit and applied for a certificate of appealability (COA). *See* Fed. R. App. P. 22(b)(2). [R. 393]. The Sixth Circuit found that "[r]easonable jurists would not debate" denial of his claims, and on March 15, 2018, denied Sheppard's application for a COA. [R. 398]. However, following briefing, the Sixth Circuit appointed Sheppard counsel pursuant to 18 U.S.C. § 3006A. [*See* R. 403]. On December 18, 2019, in a *per curiam* opinion, the Court's judgment was vacated, and this matter was remanded for not having fully developed the record as it pertains to the application of the two-level enhancement for number of firearms possessed. *Sheppard v. United States*, 788 Fed. Appx. 362 (6th Cir. 2019). Specifically, the matter was remanded with guidance to proceed as the Court deemed fit. [R. 414 at 3; R. 418]. Since then, the United States has responded in opposition and Sheppard has replied. [R. 426, 428]. After considerable review, and for the reasons below, the undersigned recommends that this motion be denied with prejudice.

**I.**

Under the Sixth Amendment, criminal defendants have the right to the assistance of counsel for their defense. U.S. Const. amend. VI. The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), controls the analysis of Sheppard's Sixth Amendment ineffective-assistance-of-counsel challenges, and requires that a movant first establish deficient performance by defense counsel. This requires showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-689. In addition, a movant must demonstrate prejudice, and in order to do so "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In 2255 proceedings, a defendant that alleges an error occurred on constitutional grounds "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Therefore, here, because Sheppard challenges the effectiveness of his trial counsel – a constitutional challenge – he bears the burden. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*). Sheppard must establish that counsel's errors were so fundamentally grave as to render the entire proceedings invalid by demonstrating that his counsel acted in a constitutionally deficient manner that prejudiced him. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

**II.**

Prior to sentencing, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) and calculated Sheppard's base offense level as

required by § 2K2.1(a)(2), the Guideline applicable to offenses involving possession of firearms. Sheppard's base offense level was determined to be 24 under 2K2.1(a)(2), which provides that a base offense level of 24 is appropriate "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense". USSG § 2K2.1(a)(2). However, Sheppard asserts that he does not have the prior felony convictions to qualify for a base level of 24. As a result, he asserts counsel was ineffective for not objecting to the application of USSG § 2K2.1(a)(2), and the base offense level of 24. But because Sheppard has two prior qualifying offenses and his base offense level was properly calculated, his counsel cannot be ineffective for failing to object. Such an objection would have been futile. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (Counsel "cannot be ineffective for a failure to raise an issue that lacks merit.").

First, in 1998, Sheppard pleaded guilty in Louisiana state court for aggravated battery and simple criminal damage to property. [R. 312, ¶ 51]. The charging documents allege that, on or about November 2, 1997, Sheppard and three others battered a man using dangerous weapons: brass knuckles, a metal pipe, and a hammer. Afterwards the men damaged the victim's pickup truck, causing $500.00 in damages. Sheppard was sentenced to three years of incarceration for the aggravated battery charge. [*Id*.]. Now, Sheppard alleges that the aggravated battery charge does not count as a crime of violence. [R. 382 at 4-8]. Contrary to his belief, this Louisiana conviction for aggravated battery *was* a crime of violence. *See United States v. Moore*, 635 F.3d 774, 777 (5th Cir. 2011) (*per curiam*) ("[A]ggravated battery, as defined by Louisiana . . . is indisputably a crime of violence under the residual clause of § 4B1.2(a)."); *United States v. Anastacio-Morales*, 776 F. App'x 202, 204 (5th Cir. 2019)

5

(recognizing the circuit's reliance on identically-worded crimes of violence provisions in other context, including Texas aggravated assault).

Second, in 2005 Sheppard pleaded guilty in a Kentucky state court to unlawfully possessing methamphetamine precursors. [R. 312, ¶ 57]. Originally, Sheppard was charged with manufacturing methamphetamine, but pleaded guilty to the amended charge of possessing precursors (with intent to manufacture), a Class D felony. [*Id.*]. Sheppard alleges that this Kentucky charge does not qualify as a controlled substance offense. [R. 382 at 12]. Unfortunately for Sheppard, this claim fails because Sheppard was convicted of a controlled substance offense under Kentucky law. The statute under which Sheppard was charged provides that:

> [a] person is guilty of **unlawful possession of a methamphetamine precursor** when he or she knowingly and unlawfully possesses a drug product or combination of drug products containing ephedrine, pseudoephedrine, or phenylpropanolamine, or their salts, isomers, or salts of isomers, **with the intent to use the drug product or combination of drug products as a precursor** to manufacturing methamphetamine or other controlled substance.

Ky. Rev. Stat. § 218A.1437(1) (emphasis added).

Under USSG § 2K2.1(a)(2), this "controlled substance" offense falls squarely within the context of "controlled substance offense" as defined in the guidelines. The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. USSG § 4B1.2(b). Thus, Sheppard's claim has no merit: this conviction was properly used to calculate his base offense level of 24 under the guidelines. USSG §2K2.1(a)(2).

In sum, any objection by counsel to the § 2K2.1(a)(2) base offense level would have been futile. See *Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006). Sheppard's Louisiana and Kentucky convictions counted for the purpose of calculating his base offense level of 24 as he met the minimum of two "felony convictions of either a crime of violence or a controlled substance offense." USSG § 2K2.1(a)(2). As a result, his claim that his base offense level was incorrectly calculated is without merit.

### III.

Sheppard's second claim arises from his calculated Adjusted Offense Level, which added two levels to his base offense level of 24 because the offense of conviction involved 3 to 7 firearms, under the Guidelines. Specifically, USSG 2K2.1(b)(1)(A) provides that if the offense involved 3 to 7 firearms, the offense level should be increased by two levels. As a result, his offense level was increased from 24 to 26. Here, Sheppard argues that he did not possess three firearms at the same time, and thus, does not qualify for the two-level enhancement. [R. 385].

Sheppard's plea agreement reflects that he pled guilty to two separate offenses of being a felon in possession of firearms, as recounted in the following stipulated facts:

(a) On or about December 22, 2012, the Defendant possessed a firearm, that is a Winchester, model 190, .22 caliber rifle, SN: B1459203, in Whitley county, Kentucky – which is located in the Eastern district of Kentucky.

(b) On or about February 20, 2014, the Defendant possessed two firearms, that is a Remington, model Wingmaster 870, 16-gauge shotgun, SN: V021310V, and a F.I.E. model Titan, .25 caliber pistol, SN: 227603, also in Whitley county, Kentucky.

[R. 295]. Because his offenses occurred on two separate dates, he asserts that counsel was ineffective for failing to object to the two-level enhancement under § 2K2.1(b)(1)(A) as he did not possess three firearms at the same time. Therefore, he contends that counsel's failure to

7

object to this enhancement prejudiced him, resulting in a greater sentence than he otherwise would have received.

In the specific circumstances of Sheppard's case, at sentencing the Court determined that the offense of conviction involved 3 firearms, based upon USSG § 3D1.2(b). That provision of the guidelines, which address "Groups of Closely Related Counts", provides that:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a *common scheme or plan.*

USSG §3D1.2(b). The effect of grouping the two counts under §3D1.2(b) results in a finding that Sheppard possessed three firearms and was subject to a two-level enhancement to his base offense level of 24. ?To support its finding, the Court correctly reasoned:

> …[I]t is clear that Sheppard, by his own statements, possessed the guns to protect himself from being robbed (notably, from being robbed of his methamphetamine). Moreover, information about his 2012 firearm possession was discovered in concert with Sheppard's 2014 arrest, and the firearms were seized at the same time. [*See* Record No. 312 at ¶¶ 16-18] While there were guns "all over" the dwelling where Sheppard was found, he admitted to sleeping in close proximity to two firearms, which formed the basis for Count 6, to which he pleaded guilty. [*Id*.] There is little doubt that Sheppard possessed the firearms to protect himself and his methamphetamine operation. [*See* Record No. 346 at 48.] Moreover, the individual whom Sheppard stated he thought he was shooting at in 2012 admitted that he had been around Sheppard's manufacturing operation. [*Id*.].
>
> … [T]he "common scheme or plan" standard does not prohibit temporally-distinct instances of possession (here, 2012 and 2014) from being amalgamated for purposes of § 2K2.1(b)(2). "In reviewing whether

> prior offenses constitute part of a 'common scheme or plan' or the 'same course of conduct' as the offense of conviction, the Sixth Circuit has never articulated a precise time bar after which conduct becomes irrelevant for sentencing purposes." *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996) Moreover, "a lapse of time between prior conduct and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct; rather, such a lapse may result when participants are forced to put the venture 'on hold.' " *Id*. There is no indication that Sheppard put his unlawful firearm possession "on hold."
>
> …[N]atural language suggests that where the offense underlying the conduct is unlawful possession, Sheppard's possession, at different times, of numerous firearms, are "part of the same course of conduct ... as the offense of conviction." § 1B1.3(a)(2). And while temporal proximity is a factor, it is not the only factor. *See United States v. Vargem*, 747 F.3d 724, 731 (9th Cir. 2014) ("[T]the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity."). Application Note 9 (A) to the 2014 Guidelines provides "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Here, the victim of the offenses (society at large) is the same, as well as the purpose and modus operandi—protection of his drug activity. Application Note 9 (B) further provides that offenses not part of a common scheme or plan may instead be considered the same course of conduct based upon "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Here, the conduct is the same. Sheppard regularly possessed firearms to protect his drug operation, and the charged instances occurred less than 14 months apart.

[R. 388]. *United States v. Sheppard*, No. 6:14-020-DCR-6, 2017 WL 3470920, at *6-7 (E.D. Ky. Aug. 11, 2017).

Although Sheppard alleges that he was provided ineffective assistance of counsel, his attorney explains his two-fold reasoning in choosing not to raise an objection to the two-level enhancement:

> a.    First, the parties, by and through counsel, discussed the number of firearms seized by law enforcement at David Powers' residence in relation to Sheppard's February 20, 2014 arrest. Through these discussions, the United States agreed that if Sheppard would take

>    responsibility for those specific firearms - that is, the Remington Wingmaster shotgun and the F.I.E. Titan pistol - both of which he admitted to having easy access to and possession of, it would not seek to attribute the remainder of those firearms seized (there were a total of nine firearms seized by law enforcement) to Sheppard either through direct or relevant conduct. Any subsequent objection to the number of firearms after reaching this agreement would have subjected Sheppard to additional arguments by the United States concerning the possession of the remaining firearms, which - had the Court agreed with the United States - would have subjected Sheppard to a greater enhancement of four levels pursuant to U.S.S.G. § 2K2.1(b)(l)(B).
>
>    b.   Second, because Sheppard had already expressly admitted to having possessed a total of three firearms as part of his plea agreement with the United States, I felt that any objection based on the total number of firearms could have placed his acceptance of responsibility credit in jeopardy. Again, this would have subjected Sheppard to a higher guideline range and potential sentence.

[*Id*. at 1-2].

Counsel states his belief that any objection to the two-level enhancement under § 2K2.1(b)(1)(A), could have cost Sheppard the reduction in his offense level for acceptance of responsibility since Sheppard already expressly admitted to possession of only three firearms in the plea agreement, and would have exposed him to a four-level increase in the offense level if all eleven firearms found during the events of February 20, 2014 were attributed to him.[3] Thus, assuming counsel objected and Sheppard had been found to have possessed 11

---

[3] U.S.S.G. § 3E1.1(a) allows for a district court to decrease a defendant's offense level at sentencing by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Application Note 1 to § 3E1.1 includes a non-exhaustive list of factors for district court consideration when deciding whether to apply the decrease. These include:
>   (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct) …
>   … and
>   (H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1 cmt. n. 1. An additional one-level decrease is available by motion of the government. U.S.S.G. § 3E1.1(b); *United States v. Collins*, 683 F.3d 697, 704 (6th Cir. 2012).

firearms on February 20, 2014, his base offense level would have been increased by four levels rather that the two he received. In addition, if he lost the three-level reduction for acceptance of responsibility, as feared by counsel, Sheppard could have received a total offense level of 32— a five-level increase over what he received. Sheppard was in no way prejudiced by counsel's alleged failure to object, and counsel is not ineffective for failing to pursue a meritless issue. *See Sutton v. Bell*, 645 F.3d 752, 756-58 (6th Cir. 2011) (finding that trial counsel was not ineffective for failing to raise several meritless objections).

To meet his burden, under *Strickland*, 466 U.S. 668, Sheppard was required to show that counsel's actions were not supported by a reasonable strategy *and* that the error was prejudicial. Sheppard has failed to prove any one of these. Any argument that the firearms associated with each distinct conviction did not count for purposes of § 2K2.1(b)(1), plainly fails because counsel was not ineffective. *See Slagle*, 457 F.3d at 528. There is no evidence of deficient performance or prejudice.

### IV.

As a final point, this Court considers Sheppard's request for appointment of counsel. [*See* R. 428]. Without counsel, Sheppard states that he is unable to move forward in this proceeding. However, appointment of counsel occurs in a post-conviction collateral proceeding only in limited circumstances and is not warranted in this case.

The Criminal Justice Act (CJA) governs appointment of counsel in the context of § 2255 proceedings. Section 3006A(a)(2)(B) states, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." *See* 18 U.S.C. § 3006A(a)(2)(B). As indicated by the permissive language

of the statute, no constitutional right to counsel exists in a post-conviction collateral proceeding. *See Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) ("there is no constitutional right to counsel in habeas proceedings[,]" citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)). In a federal post-conviction collateral proceeding, an attorney must be appointed if an evidentiary hearing becomes necessary or if the judge concludes that appointment of an attorney is necessary for effective discovery, provided the defendant is financially eligible to have counsel appointed. *See* Rules 6(a) and 8(c) of the Rules Governing Section 2255 Proceedings. But absent a discovery or hearing issue, the decision to appoint counsel in a federal post-conviction collateral proceeding is solely within the discretion of the Court, and counsel should be appointed only if "the interests of justice so require." *See* 18 U.S.C. § 3006A(a)(2)(B).

Upon consideration of the record in this matter, the undersigned concluded that an evidentiary hearing or the need for discovery was not required. During Sheppard's collateral-relief review, the undersigned did not encounter an issue indicating that the Court should exercise its discretion and appoint counsel. While Sheppard argues that he needs counsel because he lost the benefit of counsel post-appeal, that is no justification for appointment of counsel here. The § 2255 motion that Sheppard has filed in this case does not contain any unusual complexities that would make appointing counsel necessary in the interests of justice. Therefore, the undersigned also recommends that the Court deny Sheppard's request for counsel.

## V.

An evidentiary hearing is also not required to develop facts associated with Sheppard's allegations of ineffective assistance of counsel. Section 2255 requires a prompt hearing

"[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015). Defendant's burden in establishing that he is entitled to an evidentiary hearing is "relatively light." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). However, a "full blown evidentiary hearing" is not required in every case. *Smith v United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (citing *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotations omitted).

Here, an evidentiary hearing is not required because there are no factual disputes present and the record contradicts Sheppard's claims of ineffective assistance of counsel. Therefore, the undersigned finds that no evidentiary hearing is needed to resolve any disputed issues of fact.

**VI.**

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336; 28 U.S.C. § 2253(c)(2). In cases where a district court has rejected a petitioner's constitutional claims on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the denial is based on a procedural ruling, the defendant must show that jurists of reason would find it debatable whether the motion states a valid

claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Sheppard's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 327. Accordingly, the undersigned also recommends that the District Judge deny a certificate of appealability upon the entry of a final order in this matter.

## VII.

On remand, it cannot be established that Sheppard's former counsel's failure to object to his base offense level increase under §2K2.1(a)(2) and his two-level enhancement under §2K2.1(b)(1)(A) for possessing three firearms "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Therefore,

**IT IS RECOMMENDED** that:

(1) Robert Scott Sheppard's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [R. 375] be denied; and

(2) the District Judge deny a Certificate of Appealability in conjunction with the Court's entry of final judgment in this matter.

\* \* \* \* \*

Particularized objections to this Recommended Disposition must be filed within fourteen (14) days of the date of service of the same. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Failure to make a timely objection consistent with the statute and rule may result in waiver of further appeal or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Any response to another party's objections must be filed within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed July 24, 2020.



Signed By:
Edward B. Atkins    EBA
United States Magistrate Judge